**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>RECONDITION PROS PENN, LLC<br><br>      Debtor.<br><br>RECONDITION PROS PENN, LLC<br><br>      Movant,<br>v.<br><br>NO RESPONDENTS. | Bankruptcy No. 23-bk-10639-pmm<br><br>Chapter 11 |

**EXPEDITED MOTION FOR ORDER (I) APPROVING THE CONTINUED USE OF THE DEBTOR'S BANK ACCOUNTS AND BUSINESS FORMS; (II) APPROVING CONTINUATION OF ORDINARY COURSE INTERCOMPANY TRANSACTIONS AND (III) APPROVING PAYMENT OF CERTAIN PREPETITION CLAIMS**

The above-captioned debtor (the "Debtor"), by and through it is undersigned proposed counsel, Bernstein-Burkley, P.C., hereby files this *Expedited Motion for Order (i) Approving the Continued Use of the Debtor's Bank Account and Business Forms; (ii) Approving Continuation of Ordinary Course Intercompany Transactions; and (iii) Approving Payment of Certain Prepetition Claims* (the "Motion"), and in support thereof, aver as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Eastern District of Pennsylvania (this "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This matter is a "core" proceeding in accord with 28 U.S.C. § 157(b)(2).

3.  Sections 105, 345, and 363 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code") and Rule 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") serve as the statutory bases for the relief requested in this Motion.

## BACKGROUND

### A. General Background

4.  On March 3, 2023 ("Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

5.  The Debtor owns and operates a collision repair company in Pennsylvania from its leased premises located at 2700 Castor Avenue, Philadelphia, PA 19134 as well as providing mobile services to its customers.

6.  The Debtor is solely owned by Reconditions Pros, LLC (the "Parent Company"), an Indiana limited liability corporation which operates as a collision repair company in Indiana.

7.  The Debtor was formed in 2021for the purpose of providing its services in Pennsylvania.

8.  The Debtor has no employees, but rather, utilizes independent contractors (the "Independent Contractors") to perform all of Debtor's operational functions. The Debtor and Parent Company operate pursuant to an arrangement whereby Parent Company utilizes a payroll provider service (the "Payroll Provider") that pays all Debtor's independent contractors (as well as its own independent contractors) pursuant to the terms of the service agreement with the Payroll Provider.

9.  Debtor transfers funds to the Parent Company on a routine basis to reimburse it for the payments made to the Debtor's Independent Contractors from the Payroll Provider. The Independent Contractors of the Debtor only perform work on behalf of the Debtor.

10. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to Section 1107(a), 1108, and 1116 of the Bankruptcy Code.

B. **The Bank Accounts**

11.     Prior to the Petition Date, the Debtor maintained the following bank account(s) (the "Bank Account"):

| Institution | Account Type | Account Number |
|---|---|---|
| JP Morgan Chase Bank | Business Checking | XXXXX5205 |

12.     The Debtor uses the funds in this account to make payments as needed, including payments to trade vendors and other business expenses, and similar recurring charges and expenses. Debtor's customers also use this account to make direct ach deposits. The Debtor also uses the funds in this account to pay Parent Company for the payroll services provided to Debtor, as described above.

13.     As the Debtor has expended considerable time and effort into setting-up and maintaining its existing Bank Account, the Debtor believes and avers that closing its Bank Account will result in unnecessary delay, additional expenses, administrative confusion, and general disruption to its business operations, including its timely payments to vendors and receipt of payment from its customers for services provided.

14.     The Debtor proposes to continue using its prepetition account, create a clear break (no less than fifty (50) checks) in check numbers post-petition and stamp or write "Debtor in Possession" on all post-petition checks issued.

C. **The Debtor's Existing Business Forms**

15.     In the ordinary course of business, the Debtor uses a variety of checks and business forms. The Debtor believes that it would be in the best interest of its estate to continue to use all checks, correspondence, letterhead, invoices and other business forms (collectively, the "Business Forms"). If the Debtor was required to use new business forms, it would result in significant expense to the estate and it would create unnecessary confusion with regard to the Debtor's business relationships.

### D. Intercompany Transactions

16. Prior to the Petition Date, in the ordinary course of its business, as set forth above, the Debtor regularly engaged in certain intercompany transactions (the "Intercompany Transactions"), which resulted in the Debtor reimbursing funds to the Parent Company in order for the Parent Company to pay Debtor's Independent Contractors.

17. The Debtor seeks to continue use of such Intercompany Transactions on a post-petition basis. Interruption of such Intercompany Transactions would unnecessarily disrupt the Debtor's operations, which would be detrimental to the Debtor's estates and creditors.

### E. Payment of Certain Prepetition Claims

18. Prior to the Petition Date, Debtor utilized Sherwin Williams as a vendor for the purchase of certain goods used in its daily operations.

19. Sherwin Williams is a critical vendor to the Debtor and without which the Debtor cannot do business.

20. As of the Petition Date, Debtor owes Sherwin Williams $20,162.00 for amounts due incurred in the ordinary course of business between the parties (the "Sherwin Williams Prepetition Claim").

21. The Debtor seeks to pay the Sherwin Williams Prepetition Claim as a cessation of the business relationship would cause undue harm to the Debtor and cease all operations.

## RELIEF REQUESTED

22. The Debtor requests entry of an order, substantially in the form of the Proposed Order, (a) approving the Debtor's continued use of its existing Bank Account and business forms (b) approving the continuation of Intercompany Transactions and (c) payment of certain prepetition claims.

**BASIS FOR RELIEF**

A. **The Continued Use of the Cash Management System, Bank Accounts, and Business Forms is Essential to the Debtor's Ongoing Operations and is in the Best Interest of the Debtor's Estate and Creditors**

23.     The U.S. Trustee's Operating Guidelines and Financial Reporting Requirements for the Debtor-in-possession and Trustees (the "UST Guidelines") requires the Debtor to close all existing bank accounts and open new debtor-in-possession accounts.

24.     Compliance with the UST Guidelines would result in significant expense to the Debtor's estate. The change would greatly disrupt the Debtor's ongoing operations.

25.     Closing of the Bank Account would cause delays in payments to critical vendors, employees, expenses, and costs associated with the ongoing operations.

26.     The Third Circuit has recognized that maintaining all accounts separate as required by the UST Guideless may be a "huge administrative burden and economically inefficient." In re Columbia Gas Sys., 997 F.2d 1039, 1061 (3d Cir. 1993).

27.     Bankruptcy courts have routinely approved the continued postpetition use of cash management systems and bank accounts. See e.g. In re R.E. Gas Development, LLC., No. 18-22032 (JAD) (Docket No. 133) (Bankr. W.D. Pa. May 22, 2018); In re Rue21, Inc., No. 17-22045 (GLT) (Docket No. 513) (Bankr. W.D. Pa. June 12, 2017); In re ACR Mgmt., L.L.C., No. 04-27848 (MBM) (Docket No. 67) (Bankr. W.D. Pa. June 16, 2004).

28.     The continued use of the Debtor's existing Bank Account is consistent with section 363 of the Bankruptcy code, which allows a debtor-in-possession to "use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1).

29.     Similarly, the Debtor requests permission to continue the use of the existing Business Forms in order to avoid disruption of the Debtor's ongoing operations.

30. The Debtor proposes to continue using its pre-petition account, create a clear break (no less than fifty (50) checks) in check numbers post-petition and stamp or write "Debtor in Possession" on all post-petition checks issued.

**B. Waiver of Section 345(b) Deposit Guidelines**

31. Section 345 of the Bankruptcy Code requires that any deposit or investment made by a debtor be secured by either a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the U.S. Trustee for the relevant district or the deposit of securities of the kind specified in section 9303 of title 31 of the United States Code. See 11 U.S.C. 345(b)(1).

32. The Debtor asserts that the Bank Account is in compliance with the requirements set forth under Section 345 as the banks are insured and regulated by the federal agencies including Federal Deposit Insurance Corporation (the "FDIC").

33. The Debtor asserts that the Bank Account complies with UST Guidelines as it permits the Debtor to comply with the reporting requirements.

34. The Bank Account holds a significant balance and such account is held with a reputable bank, which is insured and supervised by the FDIC

35. To the extent the Debtor's existing Bank Account does not comply with requirements of section 345(b), the Debtor seeks a waiver of the requirement to establish specific bank accounts for cash collateral and tax payments. The Debtor asserts that the use of the existing Bank Account will facilitate the Debtor to make payment for its cash collateral and tax obligations.

36. Based on the size of the Debtor's deposits and cash flow, it would be a significant burden to the Debtor's estate to comply with the requirements of section 345(b). Further, the compliance with section 345(b) will cause delay and inefficient management of the Debtor's ongoing operations.

37. The discontinuation of the Debtor's access to the Bank Account will cause extreme detriment to the Debtor's ongoing operations and creditors.

38. The Debtor asserts that "cause" exists to allow the Debtor to maintain the Bank Account. *See* In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (stating that several factors, including the bank ratings, the benefit of the harm, if any, to the estate, and the reasonableness of the debtor's request in light of the overall circumstances of the case should all be considered when determining if cause exists to waive the requirements of § 345(b)).

### C. The Approval of Continued Intercompany Transactions is Appropriate

39. The Debtor's Intercompany Transactions are permitted pursuant to section 363 of the Bankruptcy Code. The Intercompany Transactions are transactions executed in the ordinary course of business. *See* In re R.E. Gas Development, LLC., No. 18-22032 (JAD) (Docket No. 133 and 273) (allowing the debtor to continue to engage in intercompany transactions because such transactions were made in the ordinary course of business during the prepetition period).

40. Payment to the Independent Contractors is also critical to the Debtor's continued operations and necessary in order to avoid any disruption in the performance of the Debtor's daily operational functions. The Parent Company's Payroll Provider will not easily allow the Debtor to set up its own payroll system.

41. The Intercompany Transactions play an integral role in the Debtor's ongoing operations and the Debtor's estate and creditors will be harmed if the continued use is not permitted.

### D. Request to Pay Certain Prepetition Obligations to Critical Vendors

42. Debtor routinely utilizes Sherwin Williams in its daily operations and is its supplier for products used in providing its services to customers. The prepetition amount owed to Sherwin Williams is minimal in comparison to the value and cost effectiveness of the Debtor's use of Sherwin Williams as a

vendor. The total amount of prepetition amounts due to Sherwin Williams is $20,162.00 (the "Sherwin Williams PrePetition Debt"). The continued relationship is essential to the Debtor's ongoing operations and the Debtor believes that it is necessary to make Sherwin Williams whole for products that they have provided in order to maintain its relationship. Accordingly, the Debtor believes that is in the best interests of the estate to pay the Sherwin Williams Prepetition Debt and hereby requests authority to do so.

43. Pursuant to section 105 of the Bankruptcy Code:

> "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11 U.S.C. 105(a).

44. The bankruptcy courts have the equitable power to authorize payment of prepetition claims if it is essential for the Debtor's ongoing operations. *See e.g.* In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999); In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

45. The Third Circuit has recognized the "necessity of payment" doctrine, which allows for the payment of a prepetition claim if it is essential to the continued operation of the business. In re Lehigh & N. E. R. Co., 657 F.2d 570, 581 (3d Cir. 1981).

46. The payment of the Sherwin Williams Prepetition Debt is essential to the Debtor's ongoing operations. Failure to make such payment may be detrimental to the Debtor's relationship with the vendor and, consequently, would be detrimental to the Debtor's ongoing operations.

E. **Request for Immediate relief and waiver of Stay**

47. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless

the court orders otherwise."

48. Bankruptcy Rule 6003(b) provides, in pertinent part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."

49. The Debtor seeks immediate entry of an order granting the relief sought herein and a waiver of any stay of the effectiveness of such an order as failure to provide such relief will result in the irreparable harm to the Debtor's estate. *See* In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n. 2 (Banrk. S.D.N.Y. 1990) (holding that the "immediate and irreparable harm" exists where loss of the business threatens ability of the Debtor to reorganize).

50. The relief sought herein is essential to prevent the disruption of the Debtor's ongoing operations.

## NOTICE

51. The Debtor will provide notice of this expedited motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the Eastern District of Pennsylvania; (ii) any purported secured creditors having an alleged interest in the Debtor's cash and accounts, (iii) the holders of the 20 largest unsecured claims against the Debtor on a consolidated basis; and (iv) all relevant state taxing authorities.

52. As this motion is seeking expedited relief, notice of this motion and any order entered hereon will be served on all parties required by the Local Rules. Due to the urgency of the relief requested, the Debtor submits that no other or further notice is necessary.

WHEREFORE, the Debtor respectfully requests that this Court enter the attached proposed Order (i) Approving the Continued use of the Debtor's Bank Account and Business Forms and (ii) Approving

continuation of Ordinary Course Intercompany Transactions; (iii) Approving payment of certain prepetition claims; and (iv) granting such other further relief as may be just and proper.

                                                Respectfully submitted:

                                                BERNSTEIN-BURKLEY, P.C.

Date:   March 22, 2023                    By: */s/ Lara S. Martin*
                                                Lara S. Martin, Esq.
                                                PA I.D.: 307272
                                                lmartin@bernsteinlaw.com
                                                BERNSTEIN-BURKLEY, P.C.
                                                601 Grant St., 9th Floor
                                                Pittsburgh, PA 15219
                                                Phone: (412)456-8102
                                                Fax:    (412)456-8135