IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>RECONDITION PROS PENN, LLC<br><br>Debtor.<br><br>RECONDITION PROS PENN, LLC<br><br>Plaintiff,<br><br>v.<br><br><br>2730 CASTOR AVE, LLC,<br><br>Defendant. | Bankruptcy No. 23-bk-10639<br><br>Chapter 11<br><br><br><br>Adv. Pro. No. |

## COMPLAINT AGAINST 2730 CASTOR AVENUE, LLC

AND NOW, comes Plaintiff, Recondition Pros Penn, LLC ("Debtor"), by and through its undersigned counsel, Bernstein-Burkley, P.C., and files this Complaint ("Complaint") against 2730 Castor Avenue, LLC ("Castor" or "Landlord"), as follows:

### JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the Eastern District of Pennsylvania (this "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Sections 105, 541, and 542[1] of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code").

---

1. Unless otherwise specified, all references to Section shall be to Sections of the Bankruptcy Code.

2. This matter is a core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), and (O). To the extent it is determined that this matter is non-core, the Debtor consents to the entry of final orders and/or judgments by this Court.

3. Debtor seeks a turnover of its security deposit pursuant to Section 542 of the Bankruptcy Code received by Castor estimated to be in an amount of no less than $240,000.00.

4. Debtor also seeks damages against Castor for breach of contract and unjust enrichment.

## PARTIES

5. The Debtor incorporates the foregoing paragraphs by reference as if the same were set forth at length, herein.

6. Debtor, Recondition Pros Penn, LLC is a Pennsylvania limited liability company and is a debtor-in-possession before this Court in the related bankruptcy of *In re Recondition Pros Penn, LLC*, Case No 23-10639.

7. Reconditions Pros, LLC ("Parent") is the sole member and 100% owner of Recondition Pros Penn, LLC.

8. Castor is a Pennsylvania limited liability company with a registered office at 209 Leedom Street, 2nd Floor, Jenkintown, PA 19046.

## PROCEDURAL BACKGROUND

9. The Debtor incorporates the foregoing paragraphs by reference as if the same were set forth at length, herein.

10. On March 3, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 subchapter V of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended, the "Bankruptcy Code") in the Eastern District of Pennsylvania of the United States

Bankruptcy Court (the "Court") commencing case number 23-10639-pmm (the "Bankruptcy Case").

11. On March 6, 2023, Richard E. Furtek was appointed as the subchapter V trustee (the "Trustee") for the Debtor.

## FACTUAL BACKGROUND

12. Prior to the Petition Date, on October 29, 2021, Debtor and Castor entered into that certain Lease Agreement for the real property located at 2700 Castor Avenue, Philadelphia, PA 19134 (the "Premises")(the "Lease Agreement").

13. A true and correct copy of the Lease Agreement is attached hereto and incorporated herein as Exhibit "A".

14. Pursuant to the Lease Agreement, Debtor was to provide a security deposit of $240,000.00 equivalent to one (1) year of Minimum Rent[2] (the "Security Deposit") upon the Effective Date, which was October 29, 2021 pursuant to the Lease Agreement

15. On October 29, 2021, Debtor provided the Security Deposit to the Landlord.

16. The Lease Agreement provided for, among other things, an initial term of five (5) years commencing on the Commencement Date.

17. The Commencement Date is defined as: "The date upon which Landlord delivers the Premises to Tenant with Landlord's Work Substantially Completed (defined below). For each day past the date that is seven (7) weeks after the Effective Date ("Outside Completion Date") that Landlord's Work is not Substantially Completed, Tenant shall be entitled to a credit towards Minimum Rent in the amount of $250 per day (the "Credit"), except for the number of days of

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lease Agreement.

such delay, if any, that are caused by Tenant or Force Majeure, including Covid-19 or a similar outbreak/pandemic. *See,* Exhibit A, Section 1.E.

18. To date, the Commencement Date has not occurred.

19. Pursuant to the Lease Agreement, Debtor was to begin occupying the space after November 19, 2021 and to pay Landlord the sum of $10,000.00[3] per month on the first day of each month (the "Reduced Rent") until the Commencement Date at which date and thereafter, the Debtor was required to pay monthly rent in the amount of $20,000 (the "Minimum Rent"). *See,* Exhibit A, Section 2.G.

20. The Lease Agreement defined the Landlord's Work in Exhibit "C-1" to the Lease.

21. Pursuant to the Lease, Landlord's Work was considered to be Substantially Completed when Landlord sufficiently completes the requisite work subject only to completion of minor punch-list items that will not materially delay or adversely affect Tenant's ability to construct Tenant's Work or open for business.

22. To date, Landlord has failed to Substantially Complete Landlord's Work and accordingly, Debtor's contractual rent for the Premises is at the Reduced Rent rate of $10,000 per month.

23. A list of the status of Landlord's Work not yet completed is attached hereto and incorporated herein as Exhibit "B".

24. Castor's failure to complete the Landlord Work adversely affected the Debtor's ability to open for business including but not limited to causing the Debtor to be unable to install any new equipment, signage, or cosmetic upgrades resulting from Landlord's failure to obtain permits and/or a Certificate of Occupancy.

---

[3] The regular monthly payment defined in the Lease Agreement as the Minimum Rent is $20,000.00 per month for the first year of the Lease.

25. Debtor has provided the Landlord with notice of default numerous times since at least April 2022. A true and correct copy of Debtor's general counsel's correspondence to Landlord's counsel is attached hereto and incorporated herein as Exhibit "C".

26. Landlord is unable and/or refusing to cure the default despite notice of same. Exhibit A, Section 14.C.

27. Despite being in default of the Lease and/or the Commencement Date not having occurred, in or around April 2022, the Landlord demanded that the Debtor remit the Minimum Rent payment in the amount of $20,000 beginning in March 1, 2022.

28. In response to the Landlord's demand, Debtor properly refused because the Premises was not operational and the Landlord Work was not Substantially Completed. The Landlord thereafter improperly changed the locks and would not allow Debtor access to the Premises .

29. Despite the Commencement Date not having occurred; the Landlord's numerous and continuing defaults; and the Landlord's improper actions, Debtor had no choice but to pay the Minimum Rent of $20,000.00 from March 2022 onward, so that the Debtor could complete equipment installation required to meet its ongoing contractual obligations with its customers.

30. From March 1, 2022 to the present, pursuant to the Lease Agreement, the Debtor was only required to pay to Landlord the Reduced Rent of $10,000 per month until the Commencement Date (which has not yet occurred). However, from March 1, 2022 to February 1, 2023, Debtor was forced to pay to the Landlord the Minimum Rent to Landlord; resulting in $120,000.00 in additional rent that was not properly due and owing to the Landlord.

31. Additionally, in or around November 1, 2022, Debtor was advised from Landlord's project manager that if Debtor paid the Landlord's architect's fee in the amount of $3,970, which

was owed by the Landlord, the Certificate of Occupancy would be issued as the Architect would pay the remaining permit fees due. In reliance thereon, the Debtor made the payment to the Architect on November 15, 2022.

32. Pursuant to the Lease Agreement, Debtor was not responsible for the Architect's fees and services, but rather, Debtor is only responsible for invoices related to services provided and requested by the Debtor. *See*, Lease Agreement, Section 4.2(a).

33. Upon information and belief, as of the Petition Date, Castor holds or should be holding no less than $240,000.00 as Debtor's Security Deposit for the Premises.

34. The Debtor now brings this Complaint requesting that this Honorable Court enter an order directing Castor to turnover the Security Deposit, and awarding Debtor damages for Castor's breach of contract and unjust enrichment claims, as well as attorney's fees.

35. The Lease Agreement provides for attorneys' fees for breach of the Lease Agreement. *See* Exhibit A, Section 15.F.

36. To date, in addition to the Security Deposit the Landlord is improperly holding, the Debtor has incurred damages resulting from the breach of the Lease Agreement in the total amount of $234,220 plus attorneys fees and costs.

37. These damages include:

(1) $110,250.00 in credits owed to the Debtor in the amount of $250.00 per day for each day that the Landlord's Work was not Substantially Completed after the Outside Completion Date up to and including the Petition Date;

(2) $120,000 in additional rent paid from March 1, 2022 through February 1, 2023 as Debtor actually paid $20,000 per month notwithstanding that the Debtor was contractually obligated under the Lease Agreement to pay only $10,000 per month; and

(3) $3,970 paid by the Debtor for the Architect's fees which amounts were properly due and owing from the Landlord; not the Debtor.

## COUNT I:
## TURNOVER OF ESTATE FUNDS UNDER 11 U.S.C. §542

38. The Debtor incorporates the foregoing paragraphs by reference as if the same were set forth at length, herein.

39. The Debtor avers that Castor is improperly holding no less than $240,000.00 as the Security Deposit for the Premises.

40. As set forth herein, the Debtor avers that it has a legal and/or equitable interest in the Security Deposit held by Castor, which makes those funds property of the Debtor's bankruptcy estate under Section 541(a)(1).

41. Section 542 provides, in relevant part –

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

42. Castor is in possession, custody, or control of no less than $240,000.00 for the security deposit for the Premises pursuant to the Lease Agreement.

43. Castor is, and has remained, in possession, custody, or control of no less than $240,000.00 during the Debtor's bankruptcy case.

44. For an in consideration of the Lease Agreement, Debtor covenanted and agreed to pay Castor a Security Deposit of $240,000.00 (equivalent to one year's rent).

45. The Security Deposit is property of the Bankruptcy Estate as it was to be held during the term of the Lease Agreement but remained property of the Debtor.

46. The Lease Agreement provides that the Security Deposit shall be used as security for the prompt, full and faithful performance by Tenant of all Tenant's obligations hereunder, and the Landlord may apply the Security Deposit only if Tenant fails to perform its obligations. *See,* Exhibit A, Section 22.

47. Debtor is not and has never been in default of the Lease Agreement. Rather, Tenant is owed credits and reimbursement for additional amounts paid to Castor which were not required under the Lease but demanded by Castor despite Castor's numerous and continuing defaults of the Lease Agreement.

48. Since the Security Deposit constitutes property of the Debtor's bankruptcy estate pursuant to Section 541(a)(1), Debtor has a legal or equitable interest no less than $240,000 under Section 541(a)(1).

49. The Security Deposit is an asset that is not of inconsequential value or benefit to the Debtor's bankruptcy estate.

50. Pursuant to Section 363, the Debtor could use or sell the Security Deposit that remain in the possession, custody, or control of Castor.

51. By operation of Section 542, Castor must deliver the Security Deposit currently in the possession of Castor.

WHEREFORE, the Debtor respectfully requests that this Court enter an order directing Castor to turnover the Security Deposit, to be held by the Debtor as an asset of the Debtor's bankruptcy estate.

## COUNT II:
## BREACH OF CONTRACT

52. The Debtor incorporates the foregoing paragraphs by reference as if the same were set forth at length, herein.

53. As set forth above, the Debtor and Castor entered into that certain Lease Agreement for the Premises.

54. The Lease Agreement grants the Debtor the right to use and occupancy of the Premises for its business purposes.

55. To date, Landlord has failed and/or refused to Substantially Complete all Landlord Work.

56. Pursuant to the Lease Agreement, Section 1.E, for each day that is past the Outside Completion Date that Landlord's Work is not Substantially Completed, Debtor is entitled to a credit towards Minimum Rent in the amount of $250.00 per day.

57. Accordingly, Debtor is entitled to $110,250 in Credit owed from March 1, 2022 through February 2, 2023 as Landlord's Work has not been Substantially Completed.

58. Additionally, Debtor is entitled to $120,000 in damages for additional rent paid from March 1, 2022 through February 1, 2023 that was improperly demanded by the Landlord and not otherwise owed by the Debtor pursuant to the terms of the Lease Agreement as the Commencement Date had not yet occurred.

59. Finally, Debtor is entitled to reimbursement in the amount of $3,970.00 for payment made by the Debtor for services rendered to the Landlord to the Architect.

WHEREFORE, the Debtor respectfully requests that this Court enter judgment in favor of the Debtor and against Castor, in the amount of $234,220 with costs and attorneys fees.

### COUNT III:
### UNJUST ENRICHMENT

60. The Debtor incorporates the foregoing paragraphs by reference as if the same were set forth at length, herein.

61. As set forth *supra*, the Debtor has suffered damages arising from the Landlord's refusal and/or inability to Substantially Complete the Landlord Work and/or its demand for payment of amounts that were not due pursuant to the Lease Agreement.

62. Castor has failed and/or refused to complete the Landlord Work.

63. Castor has been unjustly enriched at the expense of the Debtor's bankruptcy estate by receiving the benefit of Minimum Rent due (without having complied with its obligations pursuant to the Lease Agreement), not remitting for credits owed to the Debtor for each day that the Landlord's Work has not been Substantially Completed past the Outside Completion Date, and receiving the benefit of amounts paid on behalf of the Landlord for, inter alia, the Architect's Fee that is not and was not the responsibility of the Debtor but required for the Debtor to maintain operations.

64. Castor has been unjustly enriched at the expense of the Debtor's bankruptcy estate by receiving the Minimum Rent without remitting the agreed-upon consideration, as follows:

   i. The Parties agreed that, in exchange for the Debtor paying the Minimum Rent, the Landlord's Work would be Substantially Completed;

   ii. The Parties agreed that, in the event the Landlord's Work is not Substantially Completed, $10,000.00 monthly rent was due until the Commencement Date;

   iii. The Debtor relied on the Landlord's promise to credit the Debtor for each day the Landlord's Work was not Substantially Completed as well as a reduced monthly rent rate of $10,000.00 until the Commencement Date.

      iv.      The Debtor conferred a benefit upon Castor by remitting the Minimum Rent monthly, and paying for inter alia, the Architect's Fee despite the Landlord's Work not being Substantially Completed.

      v.      Castor has received and retained the benefit of the Lease Agreement and Minimum Rent payments by having its Premises improved and being paid full monthly rent despite not having performed its obligations; and,

      vi.      It is inequitable and unjust for Castor to retain the benefits without adequately compensating the Debtor and its bankruptcy estate.

WHEREFORE, the Debtor respectfully requests that this Court enter judgment in favor of the Debtor and against Castor in an amount in excess of $234,220, plus attorneys' fees and costs.

Dated: July 7, 2023

                Respectfully submitted,

                BERNSTEIN-BURKLEY, P.C.
                */s/ Lara S. Martin*
                Lara S. Martin (PA ID No. 307272)
                601 Grant Street, 9th Floor
                Pittsburgh, PA 15219-1900
                Telephone: (412) 456-8100
                Email: lmartin@bernsteinlaw.com

                *Attorney for the Debtor*